## HARDEN v. CARD.

APPEAL AND ERROR — CONFLICTING EVIDENCE — PLEADINGS — ADMIS-
SIONS—NEW TRIAL—ACCIDENT AND SURPRISE—NEWLY-DISCOVERED
EVIDENCE.

1. Where plaintiff's right to recover in a suit for wages de-
pended upon the date of a contract upon which the evidence
was conflicting, and there was also evidence tending to
impeach defendant as a witness; *Held,* that the weight of
the evidence was exclusively for the jury, and the fact that
they believed the evidence of the plaintiff and rendered a
verdict in accordance therewith, though against the evi-
dence of defendant is not ground for setting aside the
verdict on error.

2. A claim on appeal by a defendant that the date originally
written in a contract as the date of its execution had been
wrongfully changed is inconsistent with the allegations of
his answer by which he is bound that the contract bore an
erroneous date through a mutual mistake of the parties.

3. Whether plaintiff's explanation as a witness was reasonable
or not that certain admissions by him to third persons
apparently inconsistent with his claim as to the date of a
contract upon which his right to recover wages depended
was induced by defendant's request, was a question for the
jury; and it would be improper for the appellate court on
error to ignore the explanation and reverse the judgment
because of the inconsistency between said admissions and
plaintiff's claim.

4. An application for new trial upon the ground of accident and
surprise is addressed to the sound discretion of the court,
and its ruling thereon will not be disturbed on error unless
an abuse of discretion is shown.

5. Defendant in a suit for wages denied by his answer the date
of making a contract upon which plaintiff relied, as alleged
in the petition, but averred that it was made at a much later
date, and moved for the vacation of a verdict for plaintiff
and a new trial upon the ground of accident and surprise
and newly discovered evidence based partially upon what
his daughter, who had not been a witness, would testify to
respecting what had occurred at the time fixed by plaintiff
as the date of the contract. *Held,* that the defendant went
to trial upon the pleadings presumably prepared to meet
the plaintiff's evidence, and further to show affirmatively
his own averments as to the date of the execution of the

contract; and knowledge of his whereabouts and who were
with him at the time of the execution of the contract, as
well as the necessity of showing the facts to sustain his
claim upon the controverted matter, must be imparted to
him. *Held, further,* that his failure to produce his daugh-
ter at the trial to testify, or take her deposition, was a
failure to exercise diligence and justified the court in de-
nying the motion for new trial on that ground.

6. A defeated party is not of right entitled to a new trial on the
ground of surprise occasioned by the evidence of the other
party upon a matter plainly controverted by the pleadings,
where he failed to exercise and show diligence in having
all his evidence to meet the issue, and to show affirmatively
the facts averred in his own pleading.

[Decided January 11, 1907.]          (88 Pac., 217.)

ERROR to the District Court, Carbon County, HON. DAVID
H. CRAIG, Judge.

J. W. Card brought suit against Charles Harden to re-
cover a sum of money alleged to be due for wages. After
verdict and judgment for plaintiff, the case was taken to the
Supreme Court on error by the defendant. The facts are
stated in the opinion.

*McMicken & Blydenburgh* and *N. E. Corthell,* for plain-
tiff in error.

In view of several facts in the case fully proven or ad-
mitted on the trial, the claim of the plaintiff is so incredible
that no verdict should be permitted to rest upon it. That is
especially true in the light of the newly-discovered evidence,
the existence and applicability of which became apparent
only when the plaintiff had testified. The various circum-
stances connected with the continued dealings of the parties
are utterly inconsistent with the contention of the plaintiff
below. It was the plaintiff's duty to make out his case by
credible evidence. Bare assertions opposed to proved or
admitted facts are not to be blindly received and unreason-
ably credited, where material circumstances disclosed in the
evidence refute them; and when such circumstances are

numerous and independently point to the same conclusion, they become practically irresistible and exclude every other hypothesis. (Jones v. Farmer (Ga.), 10 S. E., 626.) A verdict will be set aside where all the reasonable probabilities and overwhelming weight of evidence are against it, or the testimony on one side is consistent and in harmony with known facts. (Gendron, &c., Co. v. Sautshi, 17 O. Cir. Ct., 723; Hunt v. Caldwell, 11 O. Cir. Dec., 562; Wunderlicht v. Ins. Co., 104 Wis., 382; Lee v. Ry. Co. (Wis.), 77 N. W., 714; Ferst v. O'Neil (Ala.), 19 So., 307; Davis v. Miller, id., 699; Dickey v. Davis. 39 Cal., 565; Holden v. Ry. Co. (Pa.), 32 Atl., 103; Rebul v. Chalker, 27 Conn., 114; Boyd v. Colt, 20 How. Pr., 384; Wilson v. Horne, 37 Miss., 477.)

Accident and surprise and newly-discovered evidence as grounds for defendant's motion for new trial were intimately associated in their bearing upon the evidence, as is commonly the case. (1 Spell. New. Tr., 314.) The testimony of plaintiff as to the circumstances of signing the annulment of the lease was not foreshadowed by his pleadings, but was obviously provoked if not suggested by the awkward predicament in which he found himself under the various facts as they became revealed. A party's indirect testimony is not to be anticipated by his adversary. The facts shown by the motion for new trial were sufficient to demand the granting thereof. The new evidence proposed by the motion was not cumulative, nor impeaching in character. To disprove a party's own testimony upon a point in issue is never merely impeaching, and such evidence is cumulative only when relating to the same statements made at the same time and place as are proved by other evidence. (14 Ency. Pl. & Pr., 810, 818; Weber v. Weber, 5 N. Y. S., 178; Wayt v. R. Co., 45 Ia., 217; Stineman v. Beath, 36 Ia., 73; Hambel v. Williams, 37 Ia., 224; Murray v. Kent, 92 Ia., 577; Feister v. Kent, 92 Ia., 1; Goolsworthy v. Linden, 75 Wis., 24; Van Horn v. Redmon, 67 Ia., 689; Gardner v. Mitchell, 6 Pick., 114; Chatfield v. Lathrop, 6

Pick., 417; Gray v. Harrison, 1 Nev., 502; Hobler v. Cole, 49 Cal., 250.)

Objections that evidence is cumulative or impeaching merely do not apply to admissions of the adverse party nor to the evidence which possesses sufficient probative force to render a different result probable. (1 Spell. New Tr., 225; Newhall v. Appleton, 47 N. Y. Super., 38; Katz v. Atfield, 1 Misc., 217; Hays v. Westbrook, 96 Ga., 219; Alger v. Merritt, 16 Ia., 121; Inhabitants, &c., v. Inhabitants, 6 Me., 479; Weber v. Weber, 5 N. Y. Supp., 176; Collin v. Lloyd, 31 Ga., 128; Andrew v. Mitchell, 92 Ga., 629; 5 Cow., 106; Ry. Co. v. Lovelace, 57 Kan., 195; Moran v. Freedman, 34 N. Y. Supp., 911; Gilman v. Nichols, 42 Vt., 313; Dierdorf v. Winterfield, 26 Wis., 178; Holdrege v. Hamilton, 37 Ga., 676; Kinglaber v. Wahl (Cal.), 28 Pac., 225; Ry. Co. v. Baron, 14 S. E., 421.)

*N. R. Greenfield,* for defendaant in error.

The judgment should not be reversed upon mere probabilities. The facts were clearly and reasonably explained by the plaintiff and were all consistent with his claim as so explained. If there is any evidence which, standing alone or considered apart from opposing evidence, is, if believed by the jury, legally sufficient, or might reasonably tend to support the verdict, though such evidence may not be of an entirely certain and satisfying nature, it will not be disturbed. For, upon the mere weight of the evidence, the jury are the judges, and, though the evidence would not have satisfied the mind of the appellate court upon an original investigation, yet it will not sit to weigh conflicting testimony, and in support of the verdict the appellate court will consider evidence on behalf of the appellee in its most favorable light. (3 Cent. Dig., 3935-3938; Keyes v. Kimmel, 186 Ill., 109; Lonabaugh v. Morrow, 11 Wyo., 31; Bldg. Asso. v. Laramie, 10 Wyo., 54; Jackson v. Mull, 6 Wyo., 55; Rainsford v. Massengale et al., 5 Wyo., 1; Hood v. Smiley, id., 70; Hester v. Smith, id., 291.)

To warrant the granting of a new trial on the ground of either accident or surprise, it must appear: (1) That the mistake or accident was such that ordinary prudence could not have guarded against; (2) that the mistake was not due to ignorance of the law; (3) that the result would probably be different if a new trial is granted; (4) that the applicant made prompt complaint of the surprise; (5) that the misfortune could not have been averted by the introduction of other available testimony, by a continuance, or by a dismissal without prejudice. (14 Ency. Pl. & Pr., 723, 724; 1 Spell. on New Tr., 182-203; 37 Century Digest, 167-200.) It was the duty of defendant below to come into court prepared to disprove the testimony of the plaintiff in support of his allegations. (14 Ency. Pl. & Pr., 733-735; Armstrong v. Davis, 41 Cal., 499; R. Co. v. Sponier, 85 Ind., 165; Fagan v. State, 3 Tex. App., 400.) He cannot plead surprise at material and competent evidence, even though it be false. (Cases cited last above, and Taylor v. Stage Co., 6 Cal., 228; Bingham v. Walk, 128 Ind., 164.) And after discovering the loss of the letter now claimed to be material, defendant should have called the court's attention to it and asked for a continuance, or for leave to introduce secondary evidence of its contents. After speculating on the chances of a favorable verdict, he is not entitled to a new trial. (14 Ency. Pl. & Pr., 749; 37 Cent. Dig., 1102, 195-198; Hdw. Co. v. Yankee, 9 Colo. App., 443; R. Co. v. Ins. Co., 71 Fed., 210; Aulback v. Dahler (Ida.), 43 Pac., 322.)

A party cannot be surprised at the non-attendance of witnesses whose attendance he has taken no steps to procure. (Huie v. Rogers, 54 Am. Dec., 300; Love v. Breeblove, 13 S. W., 222.)

Newly discovered evidence must comply with all the following rules in order to be sufficient ground for a new trial, to-wit: (1) It must be such as will probably change the result if a new trial be granted. (2) It must have been discovered since the trial. (3) It must be such as could not have been discovered before the trial by the exercise of

reasonable diligence.   (4) It must be material to the issue.
(5) It must not be merely impeaching or contradicting the
former evidence.   (14 Ency. Pl. & Pr., 791; 1 Spell. New
Tr., 206-230.)   A party fails to exercise due diligence if he
fails to introduce evidence of an instrument known to be
lost.   (Quigley v. Birdseye, 11 Mont., 439; Chapman v.
Moore, 107 Ind., 233; Wimpy v. Gaskill, 76 Ga., 41.)   The
fact of discovery and the showing of diligence must be
made by the affidavit of the applicant, and not by his at-
torney.  (Roziene v. Wolf, 43 Ia., 393; State v. McLaugh-
lin, 27 Mo., 111; Cole v. Thornburgh, 4 Colo. App., 95;
Russel v. Oliver, 78 Tex., 11; Arnold v. Skaggs, 35 Cal.,
684; Brost v. Moore, 44 Minn., 470; State v. Soper, 148
Mo.; State v. Bussamus, 108 Ia., 11.)   The discovery
of the materiality or importance of proposed evidence does
not render it newly-discovered, but simply discloses the
negligence of the applicant.

SCOTT, JUSTICE.

This case was before the court on a motion to strike the
bill of exceptions.   That motion having been denied, the
case is now here on the assignments of error.   The defend-
ant in error, who was plaintiff below, brought his action in
the District Court of Carbon County against plaintiff in
error, who was defendant below, to recover the balance due
upon an alleged contract for work and services performed
as foreman of defendant's cattle ranch in Carbon County,
Wyoming, from May 1, 1900, to July 1, 1902, at the agreed
price of fifty dollars per month.   A verdict was returned in
favor of the plaintiff and judgment was rendered thereon.

It is alleged in the amended petition that on May 1, 1900,
the plaintiff leased from the defendant certain ranch prop-
erty situate in Carbon County for the term of five years, and
in pursuance thereof possession of the property was taken
by the plaintiff on that day; that the agreement of lease
was reduced to writing and signed by the parties on June
14, 1900; that there was leased at the same time the cattle
and agricultural implements upon said ranch.   It is further

alleged that on or about July 30, 1900, the parties mutually agreed to annul the lease and did so annul the same by the execution of a contract endorsed upon or subjoined to said contract of lease in words and figures as follows:

"PASS CREEK BASIN, April 26, 1900.

"This certifies that we have both agreed to call this contract null and void and accts. square and that J. W. Card is on and after May 1 working for Charles Harden (a) $50.00 per month.          CHAS. HARDEN,

"J. W. CARD."

It is under this agreement that the work is alleged to have been done for which recovery is sought.

The defendant answered admitting the execution of the lease, alleging that the fixed rental by the terms thereof was $1,000 per year; denied that the agreement of annulment was executed on April 26, 1900, and alleged that it was executed on April 26, 1902, and alleges that the date 1900 was a mutual mistake and should have been ·1902; denies that services were rendered in pursuance of such agreement from May 1, 1900, to May 1, 1902, and alleged that plaintiff worked as such foreman from the last mentioned date until July 1, 1902, at the rate of fifty dollars per month, for which he was fully paid. A second defense is plead, which sets up practically the matters plead in the first defense, and in addition thereto alleges that by reason of certain advances he had made to the plaintiff and the amount due for rentals under the lease the latter was indebted to him on May 1, 1902, the date of the annulment of the lease as alleged by him in the sum of $3,800. A reply was filed denying the new matter alleged in the answer and re-alleging the date of the execution of the contract of amendment to be July 30, 1900.

Three assignments of error were presented in argument: First, that the verdict is not sustained by sufficient evidence; second, accident and surprise which ordinary prudence could not have guarded against, and third, newly discovered evidence material to the defendant which could not

with reasonable diligence have been discovered and produced at the trial.

1. The execution and effect of the contract of annulment is admitted by the parties, and the right to recover depended upon the date of its execution. That was a question of fact upon which the evidence was conflicting; and there was some evidence of an impeaching nature tending to impeach the character of the defendant as a witness. It is not necessary to set out the evidence in this opinion. Its weight was exclusively for the jury, and that the jury believed the evidence of the plaintiff and found a verdict for him even though it be against the evidence offered by the defendant is not ground for setting the verdict aside. The defendant was bound by the allegations of his answer as to mutual mistake as to the date of the annulment and his own evidence in support thereof, which does not comport with his argument here, that the date of the annulment had been changed. There was evidence tending to support the plaintiff's cause of action. The contract of annulment purported on its face to have been executed on April 26, 1900. The plaintiff fixed the time of its execution in his petition and in his evidence as on or about July 30, 1900, and explains that the date April 26, 1900, was agreed upon to show that he was to be compensated for his work during the intervening time between the execution of the lease and its annulment. The jury evidently took this view. In reviewing the decision of the court below upon this assignment of error, we may not from an examination of the record be able to say that the jury was right or that we would have decided in the same way upon the weight of the evidence, but we are equally unable to say that the verdict is clearly erroneous. Such being the case, and the evidence conflicting, the verdict ought not to be disturbed upon a question of fact.

It is seriously urged that conceded facts material to the issue are in conflict with the evidence upon which plaintiff sought to recover, and that upon such inconsistency a new

trial ought to have been granted.   A great deal of evidence
was introduced in the way of checks which had been drawn
by the plaintiff on the defendant to pay running expenses of
the ranch, and to show that the method of doing business
continued the same after as before July 30, 1900, up to
April 26, 1902.   Here, however, is a conflict of testimony,
the plaintiff claiming that the checks were in payment of
wages and current expenses, while the defendant claimed
that the checks were for advances made to the defendant
for running expenses and in pursuance of the terms of the
lease, to be repaid by the defendant.   In either case they
would be drawn in the same manner.   It will thus be seen
and it appears from the record that each party offered his
own explanation of these checks and, indeed, of all the
circumstances in the case upon, and we may say in harmony
with, his theory of the case.   Many cases have been cited
in the brief of plaintiff in error which we do not think it
necessary to here comment on.   In Wonderlich et al. v. The
Palatine Fire Ins. Co. et al., 104 Wis., 382, a special verdict
was returned; the answers were not in harmony and one
or more was contrary to facts which were conceded at the
trial, and for that reason a new trial was awarded.   In the
case before us there was no special verdict and the record
fails to disclose that any facts were conceded before, at or
since the trial upon the sole issue in the case, which was as
to when the annulment of the lease was executed.   The
plaintiff on the trial testified that after July 30, 1900, the
date upon which the lease was annulled, he continued to
hold himself out to third parties as having an interest in
the leased property and admitted making and signing an
agreement with Harden on February 12, 1901, to sell a
part of the stock covered in the lease to W. J. Kelly, a
third party, and in which contract or agreement he de-
scribed himself as a partner of Harden in the property.
Undoubtedly this admission unexplained was inconsistent
with his claim that his interest in the property had ceased
in July preceding.   The admission, however, did not stand

alone.  Plaintiff offered an explanation of why he did so.
He testified that his conduct ·in holding himself out as one
having an interest in the property was at the request of
Harden, who, he says, stated that, owing to the ill feeling
entertained in the vicinity of the ranch against him by his
neighbors, the business would prosper, and there would be
less friction with his neighbors if the latter were given to
understand that Card retained his interest in the · property,
and that he, Card, though actually working for wages,
acted pursuant to such request for the purpose of keeping
up such appearance.  This court cannot say that the ex-
planation offered was unsatisfactory or unreasonable.  The
parties and their witnesses were before the jury and the
reasonableness or unreasonableness of such explanation was
for the jury.  For this court to say that such admission was
so inconsistent with plaintiff's right to recover as to entitle
defendant to a new trial would be to lose sight of the ex-
planation offered by the plaintiff which was competent to
go to the jury and which would and doubtless did enable ·
them to harmonize his evidence.  Plaintiff in error in his
brief says: "Upon .the trial, which was had to a jury, both
parties testified.  There was also corroborative evidence
introduced.  There was also evidence tending to impeach
defendant's character as a witness, a considerable portion
of which, however, was afterwards stricken out."  The cor-
roboration of the plaintiff with reference to the execution
of the contract prior to April 26, 1902, is found in the
evidence of the witness Collins, who testified that he worked
at the ranch in 1901 and identified the lease and the con-
tract of annullment as being the same which he had seen at
the ranch in July of that year.  This court has laid down
the rule that "when the testimony is conflicting, the finding ·
of the trial court should not be disturbed unless the appellate
tribunal is convinced that such finding is clearly erroneous
or against the great weight of the evidence."  (Jackson v.
Mull, 6 Wyo., 54.)  Each of the many cases cited by plain-
tiff in error rests upon its own peculiar facts, and in all the ·

court of last resort has exercised its power to award a new trial, notwithstanding a denial by the trial court when all the reasonable probabilities and the overwhelming weight of the evidence was against the verdict. The evidence of the plaintiff being corroborated, it cannot be said that it falls within the rule laid down in that class of cases where one's right to recover rests upon his own testimony standing alone and which testimony is discredited, or impeached by showing statements before the trial totally at variance with his testimony in court, or where his testimony is disconnected, unreasonable and so contradictory at the trial, or is so overwhelmingly contradicted by the other witnesses as to render it of but little weight and where a new trial is granted on the ground that the verdict is against the great weight of the evidence.

2. The two other assignments of error may be considered together. It appeared in evidence and is undisputed, that at the time of signing the lease the number of cattle was left blank, and it was understood that the cattle were to be counted and the blank in the lease was to be filled. On June 26th following, the plaintiff having counted the cattle, wrote a letter, informing defendant of the number of cattle and which number was by the defendant inserted in the blank space in the lease which had been left for that purpose. Card testified that in their dealings the lease was referred to as the "lease" and the notation or annulment as the "contract."

The plaintiff introduced in evidence a letter written by the defendant, which letter reads as follows:

"LARAMIE, WYO., Nov. 6, 1900.

"FRIEND JACK:—Inclosed please find your contract and check for your wife for $40, and tell also I am much obliged for what she did for the children. Jack, when I came to tally out the steers I was two S steers short and I think it was the two we got out of the field the morning we left the ranch. They got away the night Mr. Miller left me at Mill

Creek and I heard of them the other side of Rock Creek from here, so they would not hang up until they got to the Bow, if they did then. Wish you would look out for them if they haven't got home. Enquire of Wm. Richardson and Cal Jessups at Widdowfield, as there is where I think they would hang up. Yours truly    CHARLES HARDEN."

The accident and surprise urged as a ground for a new trial is that plaintiff testified and "contended contrary to the purport of this letter that the annulment of the contract was signed about July 30, 1900, at the ranch of the defendant, at Pass Creek Basin, late at night; that there was no one present at the time, and that after signing the same the defendant gathered it up with other papers, put it in his pocket and took it back to Laramie with him. All of which was contrary to the facts and could not have been anticipated. And also the loss of a letter which could not be produced at the trial, which has since been found, all of which more fully appears from the affidavits hereto attached." It is conceded that the letter of November 6, 1900, was competent evidence, and in so far as it went it was binding upon plaintiff. It merely says "Inclosed please find your contract." Standing alone this letter might be subject to the construction contended for by the defendant, viz.: that it was an admission of the contract or lease being in full force and effect at the date of the letter. It must, however, be viewed and the jury had a right to construe it in the light of the other evidence given at the trial. It was corroborative of the evidence of the plaintiff that the contract was in the possession of the defendant. It was entirely consistent with his contention that the annulment of the lease was made July 30 preceding, and which contract of annulment was endorsed upon or subjoined to the lease and the sending of one would necessarily include the other. The affidavit of Mabel Harden, daughter of defendant, is to the effect that she was at the Pass Creek ranch during the summer of 1900; that her father did not visit

the ranch in July of that year, and that he was there and stayed over night on or about August 7th of that year; that she was in his company all the time during the time he was there until he retired for the night, and that the next morning she accompanied him part way to Laramie, and that she is positive no business transactions between her father and Mr. Card took place and that had there been she would have known it; and that this was the only visit at or about that time he made to the ranch. Defendant testified in his own behalf that he was at the ranch the latter part of July of that year. His evidence corroborates that of plaintiff in this respect and is at variance as to the time of his visit with that which his daughter would testify to if she were produced as a witness. However, the discrepancy as to dates is not so material as the evidence of what actually occurred during the visit at the ranch. The attorney who tried the case in the lower court deposed that he was the attorney for the defendant and acted as his sole attorney during the trial of the case; that both he and defendant "were greatly surprised at the statement and testimony of J. W. Card to the effect that the annulment of the contract was signed late at night about July 30th, 1900, at the ranch of defendant when no one else was present, and that after the signing there that the defendant gathered up Exhibit "A" and Exhibit "B" (the contract of lease and annulment) "and placed it in his pocket and took it back to Laramie with him." That such testimony and statements could not be anticipated, especially in view of the letter of November 6, 1900, introduced in evidence by the plaintiff, and that such statements were not true and that testimony to refute and prove untrue such statements could not be looked up and produced at the trial, but that since said trial I have investigated the matters and if a new trial is had the defendant will be able to produce evidence of a convincing nature to disprove all of such statements. That since the said trial there has been found a letter from the said J. W. Card to the defendant dated September 21, 1900, which con-

tains statements inconsistent with the testimony of J. W.
Card in these respects." The affidavit further says that
the letter was neither in the custody nor under the control
of Harden and that the latter was entirely unaware of its
whereabouts; that said letter was found on April 7, 1904,
on which day it came into the possession of the affiant. And
at the time of the trial he was not aware of the letter except
in a general way as stated to him by others. A copy of
the letter is attached to the affidavit and so much thereof as
is material is as follows: "Come up as soon as you can;
we will be glad to see you. You may as well bring the
contract with you, then we can put the cattle in (I mean
the number) and I will keep my copy." These affidavits
were controverted by an affidavit made and subscribed by
J. W. Card, the plaintiff, in which he admits writing and
attempts to explain the letter dated September 21, 1900,
already quoted from. He says the letter was written in
answer to several letters written by Harden, the originals
or copies of which, with the exception of one, are not pro-
duced, and also conversations had with Harden with refer-
ence to handling the stock and placing the numbers in dif-
ferent pastures, and that the, expression "you may as well
bring the contract up with you, then we can put the cattle
in (I mean the number) and I will keep my copy," referred
to putting the cattle in the different pastures. This expres-
sion must be construed and its weight determined in the
light of the evidence given upon the trial. It would, in
view of the evidence of both parties that the number of
cattle had been inserted in the lease more than two months
preceding, be unreasonable to say that it was an insistance
to have done that which had already been done. The plain-
tiff, however, by his letter desires to keep a copy of the
contract; he had none, as the papers had been, through
accident or design as stated by him, gathered up at the
time he says the annulment was agreed upon and signed
and taken to Laramie by Harden and never returned. It
is urged in argument that his contention at the trial was

inconsistent and irreconcilable with the statement contained in his letter of September 17, 1900, referred to, and a copy of which is attached to the affidavit of Harden's attorney for a new trial; and the last letter is entirely consistent with the Harden letter of November 6, following, which was in evidence, else why should he by the plain purport of his language be calling for the insertion of the number of cattle in his copy of a contract which he claims to have already annulled or cancelled? Also that by plaintiff's explanation in his controverting affidavit he seeks to have placed upon the language of this letter a strained and distorted instead of its usual and ordinary meaning. But in the view we take of the case that question or the effect of such evidence upon a jury need not be considered. The application for a new trial upon the grounds stated was addressed to the sound discretion of the trial court, and its ruling thereon will not be disturbed unless it is shown that that court abused its discretion. (14 Ency. Pl. & Pr., p. 724, and cases there cited.) While the contents of the letter were known in a general way to defendant's attorney, no secondary evidence thereof was offerd, nor was the plaintiff interrogated with regard thereto. It is altogether probable that upon the trial had the defendant done either the plaintiff would have admitted the evidence sought, as in his affidavit in opposition to the motion he admits writing the letter, but seeks to explain and put a different construction thereon from that contended for by defendant. (14 Ency. Pl. & Pr., p. 802, and cases there cited.) The affidavit of defendant's attorney stands alone, and, taking everything stated therein to be true, it fails to show where or from what source the letter was obtained. If as therein stated it was neither in the custody nor under the control of Harden, then such assertion must of necessity be hearsay, unless he knew of his knowledge where it was, and in the latter case his neglect to get it was that of his client. Harden makes no affidavit and his attorney does not state when or where diligent search was made. It is the duty of a

party to be prepared to meet the issue tendered. The allegation of the plaintiff was that the annulment of the lease was signed on or about July 30, 1900, and this was denied by the defendant in his answer and the defendant went to trial presumably prepared to meet any evidence that the plaintiff would produce to prove his case, and further to show affirmatively that the contract of annulment was in fact executed at a date long subsequent to that claimed by the plaintiff. His knowledge of his whereabouts at the time and who were with him when the annulment was executed enabled him to prepare for trial, and the necessity of making these facts appear in the evidence must upon the showing be imparted to him. That he failed to produce the daughter to testify or take her deposition as to what occurred at the ranch, although her evidence was material upon the issue, was a failure to exercise due diligence and justified the court in denying the motion. Nor can it be said that the court erred in denying the motion on the ground that the defendant was taken by surprise at the evidence of the plaintiff. He had full and complete notice from the pleadings that the plaintiff would attempt to prove that the annulment was executed on or about July 30, 1900. The defense was that the annulment of the lease was signed at a different time. The issue was clear and the case does not come within the rule announced in Kenezleber v. Wahl, 28 Pac., 225, where the answer and the cross-complaint did not disclose the nature of the defendant's case, and for that reason it was held that the plaintiff could not anticipate the character of the defense. Nor had defendant a right to rely on his construction of the letter of November 6, 1900, when his construction of the letter was contrary to the claim set up in the petition. It is not contended that the evidence was incompetent under the pleadings and the defendant not having been misled by any inducement held out or deceit actually practiced is not in a position to urge legal surprise as a ground for setting aside the verdict. (Sec. 189, Spel. on New Trials and Appellate Practice, and cases there cited;

14 Ency. Pl. & Pr., p. 733, and cases there cited.)   It was his duty to exercise and show diligence in having all of his evidence to meet the issue tendered and to prove and to show affirmatively that the contract of annulment was executed at a later date as contended by him, and his failure to do so shows a lack of vigilance which contributed to the result of the trial.   In such a case he is not of right entitled to a new trial.   (Sec. 190, Spel. New Trial and Appellate Practice.)   The questions of diligence and surprise were questions which were submitted to and passed upon by the trial court, and it does not clearly appear that it abused its discretion in denying the motion.

The judgment will be affirmed.              *Affirmed.*

POTTER, C. J., and BEARD, J., concur.