**John LAMBOUSIS, Appellant (Plaintiff),**

v.

**Sylvia M. JOHNSTON, Appellee (Defendant).**

**No. 5737.**

Supreme Court of Wyoming.

Jan. 26, 1983.

* Became Chief Justice on January 1, 1983.

Don W. Riske, Riske & Edmonds, P.C., Cheyenne, for appellant.

Mitchell E. Osborn, Grant & Grant, Cheyenne, for appellee.

Before ROONEY, C.J.,* and RAPER, THOMAS, ROSE ** and BROWN, JJ.

BROWN, Justice.

Between 1974 and 1978 appellant transferred to appellee various sums of money. In an action in the district court to recover the money, appellant alleged an oral agreement between the parties to the effect that the appellee would repay the money to appellant if certain contingencies occurred. The trial judge granted appellee's motion for a summary judgment, holding that appellant's claims were barred by the statute of frauds and that there was no genuine issue of material fact.

We will reverse.

Appellant lists the issues as:

"1. Whether the Wyoming Statute of Frauds (W.S. 16–1–101(a)(i)) bars the enforcement of the oral agreements between the parties.

"2. Whether the Wyoming Statute of Frauds (W.S. 16–1–101(a)(i)) bars the appellant's claim of unjust enrichment contained in his second cause of action.

"3. Whether the doctrine of promissory estoppel prevents the appellee from asserting the Wyoming Statute of Frauds (W.S. 16–1–101(a)(i)) as a defense.

** Chief Justice at time of oral argument.

"4. Whether the district court judge erred in granting the appellee's motion for summary judgment."

The parties developed a social relationship in 1973; the relationship expanded to encompass financial matters. Beginning in October, 1974, appellant, who had experience in the stock market, transferred various sums of cash to appellee, who invested in stocks and other investments in her own name. Appellant recommended the investments to her. During the next few years, other sums, always in cash, were transferred by appellant to appellee for investment. She made investments in her own name and sold them when appellant advised her to do so. Appellee liquidated some of these investments at a substantial profit. Coincidentally with a deterioration in the social relationship in 1979, the flow of cash dried up.

Appellant contends that there was an oral agreement between the parties to the effect that cash transferred to appellee would be repaid when the investments were liquidated, if, but only if, the investments realized a profit.[1] In addition to alleging an oral agreement to repay the principal, appellant alternatively alleged unjust enrichment or promissory estoppel.

Appellee testified that she initially considered the money transferred to her to be a loan, but that she later considered the money to be a gift. Appellee acknowledges that she received twelve separate transfers of money from appellant totaling $20,263.63. Appellant claims that the amount was $36,513. Appellee also acknowledges that she realized a profit from the money she received from appellant.[2] Appellee denied an agreement to repay any of the money received and asserted that the money transferred was a gift. Appellee alleged as defenses the statute of frauds, laches, or that the amended complaint failed to state a cause of action.

The trial court granted appellee's motion for a summary judgment, holding that the statute of frauds, § 16–1–101(a)(i), W.S. 1977, barred all causes of action and that there was no genuine issue as to any material fact.

When considering a summary judgment on appeal we have said that we have the same duty as the trial court. If the record is complete, we consider the same material as the trial court did, and inquire from the viewpoint most favorable to the party opposing the motion. It is also settled that the moving party in a summary judgment proceeding has the burden of proving the absence of any genuine issue of fact. *Dubus v. Dresser Industries, Wyo.,* 649 P.2d 198 (1982).

Section 16–1–101, W.S.1977, the statute of frauds, now recodified as § 1–23–105, Cum.Supp.1982, provides in part:

"(a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:

"(i) Every agreement that by its terms is not to be performed within one (1) year from the making thereof."

Appellant's position is that although the agreement with appellee was oral, it was not barred by the statute of frauds because he had fully performed. We have consistently held that an action on an oral contract is not barred by the statute of frauds when one of the parties has fully performed. *Engle v. First National Bank of Chugwater,* Wyo., 590 P.2d 826 (1979); *Allen v. Allen,* Wyo., 550 P.2d 1137 (1976); *Hageman & Pond, Inc. v. Clark,* 69 Wyo. 154, 238 P.2d 919 (1951); *Stewart v. McKeon,* 36 Wyo. 106, 252 P. 1024 (1927). This is true even if full performance by plaintiff takes longer than a year.

---

1. In appellant's third cause of action he asked that the amount of money transferred to appellee be returned to him, plus the profits or proceeds from her investments. However, appellant said in his deposition that the agreement between the parties contemplated, "I will get my money and she will keep the profits out of it."

2. For the purpose of this opinion the exact amounts of cash transferred and the profits realized by appellee are unnecessary.

This court has held in two cases that full performance, even if it took longer than year, took a contract outside the statute of frauds. In *Stewart v. McKeon,* supra, there was a verbal agreement between a dancehall conductor and the plaintiff; the defendant dancehall conductor was to pay $200 a month to the plaintiff as long as the plaintiff assured that dancing was discontinued at a competing hall. The agreement was not to exceed three years. The plaintiff actually did perform for sixteen months. We ruled that this complete performance of his part of the agreement removed the contract from the statute of frauds.

In *Engle v. First National Bank of Chugwater,* supra, appellant Shreve, a plaintiff below, had a contract to do some work building a house. No definite time for completion was established. The case does not state when the oral contract was entered into, but it does say that Shreve began work on the house in March or April of 1974. Appellant Engle, who did part of the construction work, also entered into an oral contract with the purchasers of the house. The case also does not state when Engle entered into the contract, but he began work in June, 1974. On May 14, 1975, work was still continuing on the house. This would make it more than a year since appellant Shreve had begun working on the house, and eleven months since appellant Engle had begun working on the house. It is obvious that appellant Shreve had entered into the contract more than a year before, and probable that appellant Engle had. On June 29, 1976, the house was not yet completed, although appellants Engle and Shreve had done substantial work on it. The appellants Engle and Shreve filed liens on September 20, 1976. We said in that case that the agreements had been substantially performed by Shreve and Engle. We ruled that the contract was outside the statute of frauds because the contract was no longer executory, having been performed by one party.

The major treatises are in accord:

" * * * But unlike other provisions of the Statute, the one-year provision does not apply to a contract which is performed on one side at the time it is made, such as a loan of money, nor to any contract which has been fully performed on one side *whether the performance is completed within a year or not. * * *"* (Emphasis added.) Restatement (Second) Contracts § 130, p. 331 (1979).

"The weight of authority supports the proposition that if performance on one side can be fully executed within a year, and is so executed, the contract is not within the Statute, *and in many cases the mere fact that it is executed on one side withdraws it from the Statute."* (Emphasis added.) Williston on Contracts, § 504, p. 626 (3rd ed. 1960).

"Furthermore, the same result is and should be reached if the plaintiff has fully performed, even though such full performance was not completed within a year. There is nothing in the statute to require a distinction; and it is the fact that full performance has been rendered that affords a reason for enforcement, and not the time within which it was rendered. For, observe that the defendant's promise is made enforceable without regard to the time necessary for its complete performance." 2 Corbin on Contracts, § 457, pp. 575–577 (1950).

In this case, we agree with appellant that the record shows that appellant had completely performed, and that therefore, the statute of frauds does not apply. Appellant testified concerning the agreement:

"A. The agreement was that the money that I will invest for her, my own money, I will take afterwards when the stock is ripen [sic] to be sold. I will get my money and she will keep the profits out of it.

"Q. Okay. Focusing in on the very first time you made a transfer, was there an agreement with regard to the stock? Did you advise her of the stock to purchase?

"A. Right, because I was buying the same stocks myself.

"Q. Okay.

"A. And I told her, you will sell when I tell you to sell because I know what the score is with the stock. Every stock she bought, I had bought myself as well."

Appellant further testified:

"A. Okay. Then I said whenever I need the money I will let you know and we will sell the stock or whatever you get from the oil wells and I'll get the money back. * * * "

Appellant then testified that about two and one-half years before June, 1982, he told appellee he was going to need some of the money. In January, 1982, he told her to sell all the remaining stock. At that point, appellant had fully performed his part of the agreement. The actions of the parties after the initial transfer of money are entirely consistent with the agreement described by appellant, except that appellee did not sell the stock to pay back the money.

Appellee contends that appellant raises for the first time on appeal the theory that there were several separate agreements rather than one agreement. We deem it immaterial whether there was a single agreement or numerous individual agreements. In either event, appellant fully performed. His part of the alleged agreement was complete. There was no testimony or suggestion that appellant promised to transfer more money to appellee or to do anything further. It is of no consequence what appellant might have done had not the romance fallen on bad times.

The trial court's determination that there was no genuine issue of material fact was apparently based on its finding that the statute of frauds barred appellant's claims. Our disposition of the case makes it unnecessary to address other issues raised by appellant.

The trial court erred in granting a summary judgment and holding that appellant's action was barred by the statute of frauds and that there was no genuine issue of material fact.

Reversed and remanded for trial.