Jack D. RICHARDSON, an individual, and Battlefield, Inc., a Wyoming corporation, Appellants (Defendants),

v.

Donald V. SCHAUB, an individual, and H & S Marketing, Inc., a Wyoming corporation, Appellees (Plaintiffs).

No. 89–149.

Supreme Court of Wyoming.

Aug. 20, 1990.

Richard H. Honaker, Honaker & Hampton, Rock Springs, for appellants.

John A. Snow and Paul M. Durham, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, and F.L. Thomas, Jr., Kemmerer, for appellees.

Before URBIGKIT, C.J., and THOMAS,[*] CARDINE, MACY and GOLDEN, JJ.

THOMAS, Justice.

At its eye, this controversy revolves around the application of Rule 15(b), W.R.C.P. At the close of the evidence, the trial court granted a joint motion to amend the pleadings to conform to the evidence. It then entered judgment in favor of Donald Schaub and H & S Marketing, Inc. (Schaub) and against Jack D. Richardson and Battlefield, Inc. (Richardson) for a commission earned by arranging a trade of land for engineering work accomplished in Richardson's subdivision. Since that specific claim for commission fees had not been pleaded by Schaub, Richardson contends that a subsequent motion for a new trial based upon surprise should have been granted. Collateral issues are asserted with respect to whether the record contains sufficient evidence to sustain the judgment for the commission fees; whether the claim is barred by the statute of frauds; and whether Richardson should have been permitted to recover on a counterclaim for repayment of a loan because Schaub had waived the defense of statute of limitations. In its rulings, the trial court resolved the question of sufficiency of evidence in favor of Schaub and concluded that his claim was not barred by the statute of frauds. The trial court did, however, permit Schaub to assert the defense of statute of limitations to Richardson's claim for repayment of a loan. Our review of the record in light of the pertinent law persuades us that there is no error in the several rulings complained of, and we affirm the judgment of the trial court.

Richardson sets forth the issues in this way:

"1. Where judgment was entered on a claim which was never pleaded, did the trial court abuse its discretion in denying a motion for a new trial based upon unfair surprise?

"2. Is there sufficient evidence to sustain the portion of the judgment entered below which related to the Bennett–Carder land trade?

"3. Are Appellees' claims barred by the Statute of Frauds?

"4. With regard to Appellants' counterclaim for repayment of a loan, did Appellees waive the defense of statute of limitations?"

Schaub addresses the same issues in his brief, but he restates them for effect in this way:

"1. Did the trial court abuse its discretion in denying a motion for a new trial based upon unfair surprise regarding the Bennett–Carder land trade?

"2. Is there sufficient evidence to sustain the portion of the judgment entered below which related to the Bennett–Carder land trade?

"3. Are Appellees' claims barred by the Statute of Frauds?

"4. Is Appellants' counterclaim for repayment of a loan barred by the statute of limitations, or by the equitable doctrines of set-off or laches?"

On January 25, 1975, Richardson entered into an agreement with Schaub and Harold Hesner pursuant to which Schaub and Hesner, for a 30% commission, were to market and sell lots in a subdivision owned by Richardson. The land was located north of Kemmerer, in Lincoln County, and was identified as the Commissary Ranch Subdivision. At that time, Richardson loaned Hesner and Schaub $10,600 for start up costs, and it is undisputed that the loan was not repaid. Battlefield, Inc. and H & S Marketing, Inc. were not parties to the agreement because Hesner and Schaub did not incorporate until February 21, 1975, and Richardson, as the sole shareholder, did not incorporate until November 7, 1975. In 1976, Hesner assigned his interest in the venture to Schaub and left H & S Marketing, Inc. In addition to marketing and selling the land, Schaub and H & S Marketing, Inc. were involved in subdividing, engineering, and surveying the Commissary Ranch lands. The record is persuasive that it is the law of this case that Schaub and

* Chief Justice at time of oral argument.

Richardson, in continuing their business relationships, treated the corporations, Battlefield, Inc. and H & S Marketing, Inc., as their respective alter egos without maintaining any true separation of the individual and corporate identities. We see no reason for the court to treat the corporations differently.

When Schaub embarked upon this business venture, he was not licensed to sell real estate in Wyoming. He relied upon the advice of several attorneys and real estate brokers in concluding that, at that time, he did not need to obtain any license under the Wyoming licensing statutes relating to brokers and agents. See §§ 33-28-101 to -206, W.S.1977. Richardson was not concerned about the fact that Schaub had no license. In 1979, Schaub became a licensed real estate salesman and, in 1982, he obtained a real estate broker's license. This latter license became inactive at the end of 1983.

In marketing the Commissary Ranch Subdivision, land was exchanged for property or services in addition to its being sold for cash or credit. In one of the exchange transactions, Bennett–Carder & Associates, Inc. (Bennett–Carder) received ten lots in the Commissary Ranch Subdivision in exchange for engineering work on a different tract, the Spring Canyon Ranch Subdivision, with those services being valued at $122,450. Richardson also owned the Spring Canyon Ranch subdivision which is north of the Commissary Ranch subdivision. In 1984, Richardson sold the entire Spring Canyon Ranch property, and Schaub had no opportunity to earn commissions from the sale of these lands.

In the period from 1975 to 1984, Richardson and Schaub conducted their business relationship pursuant to a number of modifications of the original agreement. In May of 1975, they executed an agreement to convey title to some of the parcels to Schaub and Hesner in order to permit them to sell the property as owners. This arrangement continued until the fall of 1975. From 1976 forward, Richardson and Schaub essentially defined their relationship by oral agreement. Pursuant to that agreement, Schaub and H & S Marketing, Inc. were to receive a 30% commission on property sales, but they also were obligated to pay a *pro rata* share of development costs.

Beginning in August of 1984, Richardson unilaterally adjusted the agreement so that he paid commissions to Schaub of only 10%. Schaub endeavored to contact Richardson for an explanation of the adjustment, but Richardson never responded. In July of 1987, after Schaub commenced this action, Richardson stopped paying commissions altogether.[1]

In his complaint, Schaub alleged breach of contract, anticipatory breach of contract, and quasi-contract. For relief, he sought monetary damages, an accounting, a declaratory judgment, and attorney fees. Richardson presented a counterclaim alleging that Schaub had converted property to his own use and had never paid the development fees as he had agreed.

The trial was held to the court from October 24 through October 26, 1988. At the conclusion of the evidence, Schaub and Richardson both moved to amend the pleadings to conform to the evidence, and the trial court granted these motions in accordance with Rule 15(b), W.R.C.P.[2] The court

1. In *Battlefield, Inc. v. Neely,* 656 P.2d 1154 (Wyo.1983), this court had occasion to consider another suit against Richardson and Battlefield, Inc. for non-payment of commissions for sales of subdivision lands.

2. Rule 15(b), W.R.C.P., states:
"*Amendments to conform to the evidence.*—When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be

necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would preju-

then entered its findings of fact and conclusions of law on January 16, 1989 and, in response to additional arguments and requests submitted in correspondence and briefs by counsel, supplemented them on March 13, 1989 and March 30, 1989 to correct them in appropriate ways. The court limited any recovery of commissions by Schaub to those earned during the period that he was a licensed real estate broker.[3] The judgment that was entered included $36,735, plus interest, for Schaub's services in connection with the Bennett–Carder land trade. The court ruled that Richardson's claim for the $10,600 loan was barred by the statute of limitations. With respect to the claim for Schaub's share of development costs, the court concluded it was unable to determine the amount of Schaub's share and simply awarded Richardson $1.00 in nominal damages. The judgment incorporating the several determinations was entered on April 4, 1989.

Following the entry of judgment, both parties submitted motions for a new trial or, in the alternative, to alter or amend the judgment. Richardson's motion was based upon his surprise with respect to the claim for commissions on the Bennett–Carder land trade, error in the amount of the assessment of damages, the sufficiency of the evidence, and claimed newly discovered evidence. Schaub's motion asserted error in the amount of the assessment of his damages and the sufficiency of the evidence with respect to a claimed different amount. The trial court held a hearing on these motions and then denied them, finding that the evidence supported its conclusions. Schaub initiated a cross-appeal of the judgment of the trial court, but it was dismissed, upon Richardson's motion, because of Schaub's failure to meet procedural deadlines established in the Wyoming

Rules of Appellate Procedure. This appeal, therefore, is limited to the issues presented by Richardson.

 Richardson earnestly contends that the trial court erred in failing to grant his motion for a new trial which was premised on the basis of surprise in the proceedings. Analysis of this issue depends upon the proper application of Rule 59, W.R.C.P., which states, in pertinent part:

"(a) * * * A new trial may be granted to all or any of the parties, and on all or part of the issues. On a motion for a new trial in an action tried without a jury, the court may open the judgment, if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment. Subject to the provisions of Rule 61, a new trial may be granted for any of the following causes:

 * * * * * *

"(3) Accident or surprise, which ordinary prudence could not have guarded against; * * *."

In applying this rule to its decision on a motion for a new trial, the trial court is afforded broad discretion, and its decision on the motion will not be overturned on appeal in the absence of an abuse of discretion. *Medlock v. Merrick*, 786 P.2d 881 (Wyo.1990); *DeJulio v. Foster*, 715 P.2d 182 (Wyo.1986). The same standard has been adhered to in reviewing the decision of a trial court on a motion for a new trial based on surprise since long before the adoption of the Wyoming Rules of Civil Procedure. *See Harden v. Card*, 15 Wyo. 217, 88 P. 217 (1906).

 In exercising its discretion, a trial court will find it useful to consider whether

dice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such amendment."

**3.** The ruling of the trial court was premised upon § 33–28–115, W.S.1977, which states:

"No action or suit shall be instituted, nor recovery be had, in any court of this state by any person for compensation for any act done

or service rendered, which is prohibited under this act [§§ 33–28–101 through 33–28–206] to other than licensed brokers, licensed associate brokers or licensed salesmen unless the person was licensed under this act at the time of offering to perform any act or service or procuring any promise to contract for the payment of compensation for any contemplated act or service."

the moving party has demonstrated the following criteria:

(1) Was there actual surprise?

(2) Did the facts have a material bearing on the issues presented by the case?

(3) Was the court's decision based primarily on those facts?

(4) Was the surprise a result of the inattentiveness or negligence of the moving party?

(5) Was the motion for new trial promptly filed?

(6) Did the moving party act reasonably at the time of the surprising event?

(7) Would a new trial probably achieve a different result?

*In re Adoption of S.E.*, 232 Mont. 31, 755 P.2d 27, 31 (1988). Surprise is only a ground for affording a new trial when "ordinary prudence could not have guarded against" it. Rule 59(a)(3), W.R.C.P. Surprise is not available as a ground for a new trial if the utilization of available discovery procedure could have prevented the claimed surprise. *Anderson v. Bradley*, 590 P.2d 339 (Utah 1979). *Cf. Oukrop v. Wasserburger*, 755 P.2d 233 (Wyo.1988).

The record in this instance demonstrates that Richardson did not suffer surprise in the manner required by Rule 59(a)(3). Schaub referred to commissions earned on land trades to be applied for development costs in answers to Richardson's interrogatories. Schaub also mentioned the Bennett–Carder land trade specifically in a deposition conducted by Richardson's attorney. At the trial, the first evidence concerning the Bennett–Carder land trade was educed in the course of Richardson's cross-examination of Schaub. Richardson apparently introduced this evidence in order to bolster his counterclaim for development costs but, even so, the trial court concluded that Richardson had failed to meet his burden of proof with respect to that counterclaim. Under these circumstances, Richardson hardly can claim surprise in light of the actual discovery of the evidence prior to trial and his own efforts at presenting the evidence during the course of the trial.

Richardson has failed to show surprise and, under the circumstances, there would be no need to examine the impact of the other factors listed. The record discloses, however, that Richardson failed to demonstrate that the result of a new trial would probably be different (Factor 7). This was a trial to the court, and the new trial could have been effected simply by the taking of additional testimony. Rule 59(a), W.R.C.P. The additional testimony that Richardson advised the court he wished to offer did not persuade the trial court that its decision would have been different. The trial court perceived the potential testimony as hardly more than an attack on Schaub's credibility, and the court stated that it found Schaub to be a credible witness. We conclude that there is no demonstration of an abuse of discretion on the part of the trial court in denying Richardson's motion for a new trial, and its judgment in that regard is affirmed.

■ In his framing of the issues, Richardson points to the fact that the claim never was pleaded. At the conclusion of the trial, however, both Richardson and Schaub moved to amend the pleadings to conform to the evidence, and neither objected in any way to the other's motion. Rule 15(b), W.R.C.P., is clear in its statement that issues tried by express or implied consent shall be treated as if raised in the pleadings. *Jankovsky v. Halladay Motors*, 482 P.2d 129 (Wyo.1971). That implied consent certainly extends to, and includes, those situations in which the party produces the evidence that led to the motion. 6A C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1493 at 28 (1990). The trial court correctly invoked Rule 15(b), and Richardson cannot complain now about Schaub's failure to plead the issue because the pleadings have been appropriately amended.

■ In arguing his third issue, Richardson contends that the evidence is not sufficient to support recovery for the Bennett–Carder transaction. The standard for reviewing the sufficiency of the evidence is a familiar one. On review, this court assumes that the evidence in favor of the

successful party is true; leaves out of consideration entirely the evidence presented by the unsuccessful party that conflicts with the evidence of the successful party; and affords to the evidence of the successful party every favorable inference that may be reasonably and fairly drawn from it. *Goss v. Goss,* 780 P.2d 306 (Wyo.1989).

The evidence establishing the Bennett–Carder land trade includes not only testimony but also a number of exhibits. Schaub, Richardson, and Harry Kessner, a Bennett–Carder engineer, all testified about the details of this transaction and how Schaub was involved in it. The exhibits supporting the claim include letters and other memoranda demonstrating that Schaub did arrange the land trade for engineering work on his own for the most part, as the trial court found. There is ample evidence to sustain the court's judgment.

 As an alternative contention, Richardson asserts that Schaub's claim is barred by the statute of frauds. The Wyoming statute of frauds states, in pertinent part:

"(a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged with:

"(i) Every agreement that by its terms is not to be performed within one (1) year from the making thereof; * * *." Section 1–23–105, W.S.1977.

In applying this statute, we have held that it is necessary to demonstrate some sort of writing signed by the person to be charged or his authorized agent. *Czapla v. Grieves,* 549 P.2d 650 (Wyo.1976). The writing need not be made as a memorandum of the contract, however, nor must it be made contemporaneously with the formation of the contract. *Restatement (Second) of Contracts* §§ 133, 136 (1981). There is such a writing included in this record. Battlefield, Inc. filed a property report with the United States Department of Housing and Urban Development on February 23, 1979. Richardson signed that report as president of Battlefield, Inc. A financial statement for Battlefield, Inc. is

appended to that report and, in that statement, the following appears:

"The Company has a verbal agreement to pay a commission of 30% of the total collections, principal and interest, to H & S Marketing, Inc. for handling all sales and related expenses."

When read in the context of the report, this statement reasonably identifies the parties, the subject matter, and their obligations to each other. *Restatement (Second) of Contracts* § 131 (1981). This statement is sufficient to satisfy the requirements of our statute of frauds with respect to a note or memorandum in writing and subscribed by the party to be charged.

 Furthermore, even in the absence of such a writing, the statute of frauds was satisfied in this instance by performance. An oral contract is not barred by the statute of frauds when one of the parties has fully performed. *Lambousis v. Johnston,* 657 P.2d 358 (Wyo. 1983). The record demonstrates that Schaub had done all that he was required to do in order to earn the agreed upon commission with respect to the Bennett–Carder land trade transaction.

 Finally, we turn to the contention that the trial court incorrectly ruled that Schaub could rely upon the statute of limitations in defending against the counterclaim for repayment of the loan. Schaub raised the statute of limitations as an affirmative defense in his reply to Richardson's amended counterclaim. The evidence that Schaub offered concerning the loan demonstrated that it was made in 1975 for start up costs and was not repaid. The loan was not evidenced by any written agreement that was offered at trial. The period of limitations for bringing an action to recover on such an agreement is eight years. Section 1–3–105(a)(ii), W.S.1977. If no time is fixed for the repayment of a loan, the obligation to pay arises immediately, and the statute of limitations begins to run from the date of the loan. *Johnson v. Wold,* 475 P.2d 714 (Wyo.1970). That rule is applicable here. Richardson filed his counterclaim in 1987, some twelve years

after Schaub demonstrated that the repayment of the loan was due.

 In asserting the statute of limitations as a defense, the defending party must support the bar of the statute of limitations by proof, and the other party then must introduce evidence to avoid the consequences of the statute. *See* cases cited in 54 C.J.S. *Limitations of Action* § 292 (1987). Schaub met his burden by proving the date of the loan. The burden of proof to demonstrate that the bar of the statute of limitations did not apply then became that of Richardson. *E.g., Olson v. A.H. Robins Co.,* 696 P.2d 1294 (Wyo.1985). There is no evidence in this record to demonstrate that the case comes within some exception that would prevent recovery being barred by the statute of limitations. We find none, and Richardson did not direct us to any.

The judgment of the district court is affirmed.

URBIGKIT, C.J., files a dissenting opinion.

URBIGKIT, Chief Justice, dissenting.

Three reasons lead me to consider the majority opinion to be erroneous.

## A. ISSUES PRESENTED

First, the decision by the trial court to allow Donald V. Schaub (Schaub) a commission for the Bennett–Carder & Associates, Inc. land trade is not supported by sufficient evidence. W.S. 1–23–105 (Statute of Frauds) prohibits use of the "evidence" relied upon by the majority. Without that "evidence," there is no evidence to allow Schaub a commission for that land trade. The majority allows a legally void contract to become legally binding many years later when Schaub finally acquired a broker's license. A non-party to the agreements, if any, becomes the successful plaintiff as an individual participating in business as a corporation. *Cf. Ferguson v. Ellis Rubin Law Offices, P.A.,* 559 So.2d 80 (Fla.App. 1990).

The structural flaw in the argument advanced by the majority is simple but fatal. The broker's "agreement" referred to by the majority occurred prior to the time Schaub acquired his broker's license in 1982. That agreement is then void under W.S. 33–28–115 and cannot be used to establish and identify legal obligations. *Dixon v. Ringsby,* 405 P.2d 271, 275 (Wyo. 1965); *Owens v. Capri,* 65 Wyo. 325, 202 P.2d 174 (1949). Without legal obligations identified, Restatement (Second) of Contracts § 131 (1981) cannot be satisfied. Without Restatement (Second) of Contracts, *supra,* § 131 being satisfied, the statute of frauds continues to operate and prohibits use of that agreement as evidence to establish an obligation by Jack D. Richardson (Richardson) to pay Schaub a thirty percent commission for the Bennett–Carder land trade. Without that evidence, there is no evidence to support the grant of a thirty percent commission. With no evidence, the determination cannot be supported by sufficient evidence. *Kirkwood v. Kelly,* 794 P.2d 891 (Wyo.1990).

To overcome the bar to Schaub's cause of action under the statute of frauds, the majority looks first to a property report submitted by Richardson, as President of Battlefield, Inc., to the United States Department of Housing and Urban Development (HUD) on February 23, 1979 which refers to some earlier "verbal agreement." [1] The majority says that agreement "reasonably identifies the parties, the subject matter, and their obligations to each other" and then looks to Restatement (Second) of Contracts, *supra,* § 131 to overcome the statute of frauds. But if the agreement is void, there are no obligations to identify.

Second, I cannot approve the introduction of a new and novel claim for recovery post trial in the fashion evidenced by this record. Judgment was granted on a claim neither asserted nor pleaded and consequently never contested nor defended.

Third, the holding permits the award of a real estate commission to a corporation

---

1. There is a written 1975 "Brokerage Agreement" signed by Richardson which is also rendered void under W.S. 33–28–115 because Schaub was not a licensed broker at the time.

never listed with the real estate board in violation of the Wyoming statutes as well as the rules of the Wyoming Real Estate Commission.

*To tell the story more simply, we have an unqualified corporation winning a judgment on a claim which was never pleaded nor proved and an individual—not the corporation—collecting on that judgment.*

## B. BACKGROUND

This appeal centers around one specific transaction for which the trial court awarded a commission. The real estate commission claim comes from developer's land trade for services performed by the engineering firm Bennett–Carder in Spring Canyon Ranch of $36,735 and accrued interest of $15,857.28 computed back to 1984. The trial court awarded the commission because it found Schaub was a licensed real estate broker during the time of the Bennett–Carder transaction, despite the fact that the "agreement" upon which the commission was based occurred before he was a licensed broker. This decision was made despite the fact that H & S Marketing, Inc. under which Schaub, a Utah realtor, operated was *never* qualified to provide real estate sales activities under our statutes. As a result, this court condones easily recognized violations of Wyoming real estate law, involving both criminal and civil penalties. I strongly reject such an approach.

## C. ANALYSIS

I. Insufficiency of the Evidence.

W.S. 33–28–115 states:

No action or suit shall be instituted, *nor recovery be had,* in any court of this state by any person for compensation *for any act* done or service rendered, which is *prohibited under this act* [§§ 33–28–101 through 33–28–206] to other than licensed brokers, licensed associate brokers or licensed salesmen *unless the person was licensed under this act at the time of offering to perform any act or service or procuring any promise to*

*contract for the payment of compensation* for any contemplated act or service. (Emphasis added.)

Under *Doran v. Imeson Aviation, Inc.,* 419 F.Supp. 586, 588 (D.Wyo.1976) and *Dixon,* 405 P.2d 271, W.S. 33–28–115 [2] was held to mean a contract is illegal or *void* when it is made in violation of that statute. *Void,* not voidable. Schaub entered into a "brokerage agreement" with Richardson in 1975—many years before Schaub became a broker. Schaub was only licensed as a broker in Wyoming from April 1982 to January 1984. If the "verbal" agreement referred to in the 1979 report to HUD is void under W.S. 33–28–115 because Schaub was not a broker when he made the broker's agreement, then there are no legal obligations to identify. This means Restatement (Second) of Contracts, *supra,* § 131 cannot operate because there are no legal obligations to identify. The statute of frauds then remains unsatisfied because there is no note or memorandum in writing which can have legal effect. The statute of frauds then continues to operate.

To argue that the Bennett–Carder land trade can serve as the basis for awarding Schaub a thirty percent commission for the Bennett–Carder land trade because that trade occurred during the time when Schaub did have a broker's license is to violate the principles of statutory construction previously touted by this court. *See Cyr v. Board of County Com'rs of Platte County,* 780 P.2d 986, 988–89 (Wyo.1989); *Story v. State,* 755 P.2d 228, 231 (Wyo. 1988); *Schultz v. State,* 751 P.2d 367, 370 (Wyo.1988); *State Bd. of Equalization v. Tenneco Oil Co.,* 694 P.2d 97, 99 (Wyo. 1985); and *Kamp v. Kamp,* 640 P.2d 48, 50 (Wyo.1982).

In *Cyr,* 780 P.2d at 989, we said "it is not necessary to resort to construction or interpretation where the meaning is plain." We give "effect to all sections of the statute and [give] words their ordinary meaning" to find the "purpose and direction" of the statute. *Id.* at 988. W.S. 33–28–115 says no suit shall be instituted *nor shall recov-*

---

**2.** Then numbered W.S. 33–355.15.

*ery be had "unless* the *person* was *licensed under this act at the time of offering* to perform any act or service *or procuring* any promise to contract *for the payment of compensation* for any contemplated act or service." (Emphasis added.) Schaub was not a licensed broker at the time of offering in 1975 or 1979. The plain meaning of the statute—as I understand plain meaning—means Schaub cannot recover for a transaction during the short time he was a broker because Schaub was not licensed at the time of the "verbal agreement." Permitting the agreement to have force during the period of Schaub's brokerage license violates both the plain meaning of the statute and the navigational principles which we have said we use to guide our understanding of legislative intent. *See Archuleta v. Carbon County School Dist. No. 1,* 787 P.2d 91, 94 (Wyo. 1990) and *State ex rel. Wyoming Workers' Comp. Div. v. Miller,* 787 P.2d 89, 90 (Wyo. 1990).

The one other argument advanced, almost as an aside, is equally fatally flawed. The majority argues that "Schaub had done all that he was required to do in order to earn the agreed upon commission" under the rule of full performance discussed in *Lambousis v. Johnston,* 657 P.2d 358, 359–60 (Wyo.1983). That statement is completely unsupported and simply begs the question. If the agreement is void, the "agreed upon commission" is simply a part of that void agreement. The only way the majority can say Schaub had done all that he was required to do is to accept as valid an agreement the law has previously held is void. The discussions in *Lambousis,* 657 P.2d at 360 which, in turn, discusses *Engle v. First Nat. Bank of Chugwater,* 590 P.2d 826 (Wyo.1979) and *Stewart v. McKeon,* 36 Wyo. 106, 252 P. 1024 (1927), refer to the full performance of a verbal agreement or contract which the law does not render void. As noted before, this agreement was void and reliance on *Lambousis,* 657 P.2d 358 is misplaced.

As in *Bowlerama, Inc. v. Woodside Realty Co.,* 752 P.2d 1377, 1387 (Wyo.1988), Urbigkit, J., dissenting, I see "[t]his decision poorly serv[ing] the purpose for which

the" real estate laws were enacted. In *Stauffer Chemical Co. v. Curry,* 778 P.2d 1083, 1093 (Wyo.1989), we said this court follows the rule of statutory construction that "the legislature is presumed to intend to adopt legislation that is reasonable and logical and does not intend to adopt statutes that are futile." Today's holding is inconsistent with that language in *Stauffer Chemical Co.* and renders futile the legislative enactment of W.S. 33–28–115.

## II. Unpleaded Claim Award.

There is a second reason why the original judgment and present holding is faulty. To portray the horrendous nature of the mistake made, it is necessary to review the record of proceedings from which this unexpected gift to Schaub is ultimately derived. Perhaps there is a message, but it cannot be exculpated from *stare decisis* or "How to Try Lawsuits" handbooks and lectures.

After the close of evidence and before the decision was made to submit final argument by filed memoranda, a rather normal event occurred wherein Richardson's counsel first stated:

> MR. HONAKER: Your Honor, for the record, the Defendant would like to make a motion to amend the pleadings to conform to the evidence.
>
> THE COURT: Any objection?
>
> MR. SNOW: We would make the same motion.
>
> THE COURT: Any objection?
>
> MR. HONAKER: No, sir.
>
> MR. SNOW: No, sir.
>
> THE COURT: Then the motions for both sides are granted.

Without further discussion, the subject was closed and no colloquy ensued as to what might be involved in "amended pleadings."

In the written final argument memorandum then made following trial, Schaub threw out a small hook which caught a whale of a judgment:

> A trade which needs to be added to Exhibit 41 is the trade of ten Commissary Ranch lots which Schaub arranged in exchange for work Bennett–Carder did

on Spring Canyon Ranch. * * * This trade came to light in the course of defendants' cross-examination of Kessner. * * * The value of these lots was $122,-450. * * * These were lots traded by Schaub for Richardson's benefit, involving non-Commissary Ranch development work.

Exhibit 41 had provided Schaub's basic claim for commissions and included each item for which unpaid balances were demanded. Actually, the pleadings and memoranda filed by both litigants made clear that lands traded for development services were not subject to commission since Schaub was obligated to pay for development costs, thirty percent, and the use of lands insured proportionately to each party.

The Bennett–Carder trade out of engineering services for land did not first occur in the second phase, Spring Canyon Ranch, but had occurred in 1979 as a $40,000 trade out for surveying services in the initial Commissary Ranch First Phase project.

At the close of evidence, no claim had been made in any way that any of these land trade transactions were activities for which the broker, H & S Marketing, Inc., and its principle, Schaub, should be compensated. Actually, the evidence later used by the trial court on the subject had been presented by Richardson in addressing his pleaded thesis that if any oral agreements were relied upon, those land

trade agreements required the broker to pay thirty percent of development costs and this included Spring Creek Ranch. Richardson's proof of Spring Creek Ranch services consequently included the traded out engineering services for which first phase lands were exchanged. This record is devoid of any suggestive evidence, let alone valid evidence, that an agreement was ever made between the parties applied to any pleaded issue that a commission would be paid for traded out project development services. The histrionics in responsive contention by Richardson are understandable since the trial court accepted the non-pleaded,[3] non-proved gambit to create not only a judgment, but to award four year's interest and to do so even though the transaction was not completed until substantially after Schaub had departed from the Wyoming scene and was no longer qualified by himself to transact Wyoming real estate brokerage business.

To add to the absurdity, the triggering event upon which a commission is now granted was not the completed transaction, but was the acceptance by Bennett–Carder of the identified lots which would serve as compensation for their services. Perhaps if only to serve as a guidepost for litigants, the pathway following initial post-trial argument contention to final judgment and appeal is attached as an appendix reflecting subsequent pleadings on this issue and decision.[4] This was not a waiver case, *see*

---

**3.** On the same subject of unpleaded issues, I cannot concur with the majority that a statute of limitation defense was properly pleaded to deny repayment to Richardson for his cash advances which were obviously a part of the ongoing account stated premise upon which this litigation was tried. Schaub admitted the debt and its nonpayment and should have been faced with its inclusion in the accounting proceedings which constitute this case.

**4.** Evidencing the $40,000 first trade for which a commission was *not claimed* and also *not allowed* are several exhibits which, in significant part, relate:

Letter of Bennett–Carder to Schaub, H & S Marketing, Inc.:

As originally agreed, we are to receive our engineering fee for the Commissary Ridge Subdivision in land parcels within the subdivision. I understand that $3000.00 per acre is the price we are to use in determining the

total acreage due us. Accordingly, I have selected the following parcels to arrive at the total fee of $40,000.00. Unit C–1 lots 20 and 25, Unit C–2 lots 43 and 100, and Unit C–3 lot 2.

This combination of lots totals 13.358 acres or $40,074.00 based upon $3000.00 per acre. If we end up with these lots, we will pay you the difference of $74.00. I will be in your area next week and would like to complete the land transfer at that time, if possible.

In closing, I want to express my appreciation for the excellent working relationship we have had during this project. It has been a real pleasure working with you and Jack.

The letter was responsive to a January 25, 1979 handwritten note from Schaub to a representative of Bennett–Carder stating:

Sorry about the delay in getting this information to you. As I mentioned to you on the phone, it is Jack's desire that you choose those

*Western Standard Uranium Co. v. Thurston,* 355 P.2d 377 (Wyo.1960), and certainly not a theory of the case tried by express or implied consent resolution, *see Title Guaranty Co. of Wyoming v. Midland Mortg. Co.,* 451 P.2d 798 (Wyo.1969) and *Lore v. Town of Douglas,* 355 P.2d 367 (Wyo.1960).

### III. Allowing a Commission to an Unqualified Corporation.

In third error, the majority's holding utterly fails to preserve legislative intent. *Toavs v. State By and Through Real Estate Commission,* 635 P.2d 1172 (Wyo. 1981); *Mapes v. Foster,* 38 Wyo. 244, 266 P. 109 (1928). The glossing over of the distinction between the corporate entity and Schaub cannot be justified by the record which portrays clearly that the enterprise was between two bargaining and dealing corporations. Volumes of documents reflect that the entity providing the brokerage service was not Schaub, but was H & S Marketing, Inc., the corporation he owned and controlled. Indeed, Schaub used this distinction to his advantage to escape the statute of frauds. Schaub argued that despite the fact H & S Marketing, Inc. did not exist when the original agreement of January 25, 1975 was executed, the entity was subsequently created and its operational status as the transacting entity was confirmed.

It would serve well the interest of Wyoming law if at least the majority had applied the trial court's thesis of non-qualification of a realtor, *Doran,* 419 F.Supp. 586; *Rosenberg v. Rosenblum,* 72 Wyo. 91, 261 P.2d 41 (1953), and denied any judgment to the unqualified corporation. It is not necessary to wander far in Wyoming statutes to achieve recognition that an unqualified corporation cannot engage in the real estate business in Wyoming. W.S. 33–28–102(a)(xii) provides that " 'person' means individuals, corporations, partnerships or associations, foreign and domestic." H & S Marketing, Inc. was clearly acting as a broker in this transaction which commenced in 1975 and continued until the Bennett–Carder land transaction was completed in 1987 (despite the fact that even Schaub had surrendered his Wyoming license at the end of 1983). *Dixon,* 405 P.2d 271. Applicable to the unlicensed status of H & S Marketing, Inc. are two specific Wyoming statutes.

W.S. 33–28–114 reads:

> parcels you want—totalling $40,000. This is based on a per acreage price of $3,000; we are currently marketing the property on an average of $4,500. per acre.
>
> I have indicated on the maps enclosed, those lots which have already been sold.
>
> If I can be of any further assistance, please don't hesitate to call upon me.

Both communications were confirmatory to the agreement made by Richardson in approving a letter of May 27, 1977 which was received from Bennett–Carder and stated:

> This letter will confirm our verbal agreement of last Saturday, May 21, 1977, for engineering services to subdivide approximately 800 acres of land in Lincoln County, Wyoming. The land to be divided is in two tracts described as follows:
>
> [land described]
>
> Bennett–Carder & Associates, Inc. propose to furnish the necessary personnel, equipment and material to survey and subdivide the above two tracts into lots of approximately 3 acres each, terrain and physical features permitting. The final configuration of each tract will be subject to your approval. We will furnish the necessary plats for approval by the County Planning and Zoning Commission of Lincoln County, Wyoming.

> Our fee will be $40,000.00. We agree to accept this fee, upon completion of all work, in lots within this subdivision. The value of the lots so taken in payment shall be based upon the average market price at the time of settlement. The actual lots selected will be by mutual agreement.
>
> Work, in addition to that described above, will be invoiced at the rates set forth in the attached schedule. Should for any reason, the planned subdivision not materialize, we will invoice you for work performed to date at these rates.
>
> Jack, this is my understanding of our agreement. If you concur, please sign and return one copy of this letter.
>
> Sincerely,
> BENNETT–CARDER & ASSOCIATES, INC.
> /s/
> C. Gene Bennett
> Vice–President

The Spring Canyon Ranch second phase services settlement was evidenced by a selection of lots memorandum and completed by conveyance of the described properties by deed dated May 5, 1987. Conveyance was made by Battlefield, Inc.

(a) Any person acting as a broker, associate broker or salesman without first obtaining a license is guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than one thousand dollars ($1,000.00) or by imprisonment in the county jail for a term not to exceed six (6) months. Upon conviction of a subsequent violation the person shall be punished by a fine of not more than one thousand dollars ($1,000.00) or by imprisonment in the county jail for a term not to exceed one (1) year or both. If a corporation is convicted it shall be punished by a fine of not more than five thousand dollars ($5,000.00).

(b) If any person receives any money or the equivalent thereof as a fee, commission, compensation or profit by or in consequence of a violation of any provision of this act [§§ 33–28–101 through 33–28–206], he shall, in addition, be liable to a penalty of not less than the amount of the sum of money so received and not more than three (3) times the sum so received as may be determined by the court, which penalty may be recovered in a court of competent jurisdiction by any person aggrieved.

W.S. 33–28–115 reads:

No action or suit shall be instituted, nor recovery be had, in any court of this state by any person for compensation for any act done or service rendered, which is prohibited under this act [§§ 33–28–101 through 33–28–206] to other than licensed brokers, licensed associate brokers or licensed salesmen unless the person was licensed under this act at the time of offering to perform any act or service or procuring any promise to contract for the payment of compensation for any contemplated act or service.

Unfortunately, this court does not just interpret the Wyoming real estate code. *Cf. Mapes,* 266 P. 109. Instead, it either accepts this transaction for undefined reason or decides without discussion to void the regulatory purpose of the entire code. *Toavs,* 635 P.2d 1172. The egregious nature of this turn of events is not ameliorated by Schaub first contending that justification could be found by Schaub being an employee of Battlefield, Inc. and then contending that a joint venture and partnership existed. Obviously, H & S Marketing, Inc. was not an employee under the circumstances.

This file reflects every imaginable transgression of real estate regulation. These transgressions include: lack of real estate licensing for brokerage activities; salesman leasing a license from a broker who has no responsibility; registered realtor's use of unlicensed salespeople; failure to conform or comply with documentation required by rules of the Wyoming Real Estate Commission; and finally, a suit for commission fees by an entity that was never qualified to be a realtor.[5] *See* W.S. 33–28–101 through 33–28–206 and the Wyoming Real Estate Laws and Regulations (12/12/88) for current text.

### D. CONCLUSION

I would reverse and remand for entry of a judgment in favor of Richardson on any judgment granted H & S Marketing, Inc., *Doran,* 419 F.Supp. 586; *Dixon,* 405 P.2d 271; *Rosenberg,* 261 P.2d 41; *Owens,* 202 P.2d 174; *Mapes,* 266 P. 109, and reverse and deny recovery to Schaub for the Bennett–Carder land trade transaction of $36,-735 plus assessed interest of $15,857.28. Technically, Richardson is probably entitled to recover all fees previously paid, but that goes beyond the pleadings or contentions presented, particularly so since a cross-appeal by Richardson has not been made. *See* W.S. 33–28–114. *Cf. Bowlerama, Inc.,* 752 P.2d 1377, Urbigkit, J., dissenting.

### APPENDIX

Bennett–Carder first appeared in Schaub's post-trial argument memorandum

---

5. The litigative process demonstrated by this record, where Schaub, having the burden of proof, before completion of trial, never alleged, never asserted and never documented a claim for recovery of the character granted, can best be described as hit and miss (throw everything at the wall and see if something sticks) or punch bowl adjudication (you keep pouring everything in until hopefully favor is to be found with the flavor by those who determine).

filed November 15, 1988 (the trial concluded October 26, 1988), which stated:

A trade which needs to be added to Exhibit 41 is the trade of ten Commissary Ranch lots which Schaub arranged in exchange for work Bennett–Carder did on Spring Canyon Ranch. * * * This trade came to light in the course of defendants' cross-examination of Kessner. * * * The value of these lots was $122,-450. * * * These were lots traded by Schaub for Richardson's benefit, involving non-Commissary Ranch development work.

Richardson's post-trial argument memorandum filed December 1, 1988 stated:

8. *Bennett–Carder Land Trade for Development Costs*

a. For the first time in any place or in any context, in their Trial Brief the Plaintiffs lodge a new claim for $36,735.00 which they say is 30 percent of the value of 10 lots traded to Bennett–Carder for development work on Spring Canyon.

b. Jack Richardson, not Don Schaub, concluded the $122,450.00 land trade with Bennett–Carder. * * * Prior to their work on Spring Canyon, Gene Bennett and Chuck Johnson of Bennett–Carder had accepted land from Richardson in exchange for development work on Units C–1, C–2, and C–3. Those transactions were conducted directly with Richardson.

c. Plaintiffs' claim is wholly inequitable. Jack Richardson traded his own land to a contractor he had personally worked with over the years, and Plaintiffs now attempt to claim with a straight face that the Court should order Richardson to pay them $36,735.00 for Richardson's own land. Even if the claim were not without basis in law and equity, it has never been pleaded and should not now be addressed by the Court.

Schaub's reply brief stated:

3. *Bennett–Carder*—Regarding the Bennett Carder land trade for development costs discussed in Defendants' Brief at p. 16, defendants are complaining regarding Schaub's legitimate claim for commissions on a trade that defendants themselves introduced into evidence. Plaintiffs have consistently taken the position in this litigation, and defendants have agreed, that plaintiffs are entitled to a 30% commission on all Commissary Ranch lots traded where defendants received the entire benefit. This is exactly the situation involved with the Bennett–Carder land trade. Schaub's entitlement under this claim is no different than if Schaub had arranged for a trade of Commissary Ranch lots for work done by Bennett–Carder on Richardson's personal ranch. The work in this case, just happened to be on the Spring Canyon Ranch property, and has accrued entirely to defendants' benefit.

Defendants assert that Jack Richardson, not Don Schaub, concluded the $122,450 land trade with Bennett–Carder. In support of this position, they cite to testimony of Jack Richardson at p. 357 of the Transcript and Harry Kessner at p. 234 of the Transcript. However, there were actually two land trades with Bennett–Carder—one involving development work on Commissary Ranch and the other on Spring Canyon Ranch. The testimony cited by defendants appears to relate to the Bennett–Carder work on the Commissary Ranch property, which does not relate to this claim.

Schaub disputes that Richardson arranged the Bennett–Carder work on either project. He testified that he was the person who originally found Bennett–Carder through his neighbor in Rock Springs, and that he, not Richardson, arranged for the work on both properties. * * * The documentary evidence introduced by defendants themselves supports this.

In Exhibit M–4, an exhibit introduced by defendants, a memorandum of agreement regarding the trading of development work on Spring Canyon Ranch in return for lots in Commissary Ranch was signed by Don Schaub, Harry Kessner and Chuck Johnson. It stated in pertinent part as follows:

10 Lots [Commissary Ranch]
Unit C–1 Lots 17, 18, 35

Unit C–2 Lots 9, 49, 71

Unit C–3 Lots 15, 16, 29, 30

Total $122,450—Payoff for Spring Canyon Ranch, Lincoln County, Wyoming Survey.

Paid in full.

1/14/83
/s/ Don Schaub
/s/ Harry J. Kessner
/s/ Chuck Johnson

* * * The warranty deed for this was not executed until May 5, 1987, but it includes each of the lots referenced in the foregoing memorandum agreement. * * * Since Schaub arranged this trade, he is entitled to 30% of the value of the lots traded, on the same basis as if Richardson had received a painting in trade or if he had Bennett–Carder perform work on his personal ranch. While it is true that Richardson did "conclude" the trade by signing the warranty deed, this would be true as to every trade. If this were the measure of who was responsible for the trade, the agreement in this regard would be a nullity because Schaub could never be deemed to have arranged a trade. At the close of the evidence, plaintiffs amended their Complaint to conform to the evidence, which includes this particular claim.

The documentary evidence also supports the fact that Schaub arranged the earlier Bennett–Carder survey work on Commissary Ranch. This claim of plaintiffs' is an effort for a corresponding development cost. In a letter from Gene Bennett to Don Schaub, dated March 16, 1979 regarding engineering work on the Commissary Ranch project, Mr. Bennett stated:

As originally agreed, we are to receive our engineering fee for the Commissary Ridge Subdivision in land parcels within the subdivision. I understand that $3,000 per acre is the price we are to use in determining the total acreage due us. Accordingly, I have selected the following parcels to arrive at the total fee of $40,000. Unit C–1 Lots 20 and 25, Unit C–2 Lots 43 and 100, and Unit C–3 Lot 2.

(Emphasis in original.)

In initial findings and conclusions filed January 16, 1989, the trial court did not address the Bennett–Carder claim, although it found fit to deny any claims by Richardson for proration of the Spring Canyon Ranch development costs. First trial court attention was evidenced in supplemental findings and conclusions filed March 13, 1989, where the trial court stated:

4. Plaintiffs seeks [sic] commissions for the Bennett–Carder Associates work-land trade. Within five (5) days after receipt of this order, Defendants shall inform the Court in writing of their objections to the Bennett–Carder commissions, if any, together with the reasons for their objections. Five (5) days after receipt of Defendants' objections, if any, Plaintiffs shall inform the Court in writing how Plaintiffs calculated interest in the sum of $22,450.32. Plaintiffs shall also respond to Defendants' objections.

Richardson responded in a detailed filing March 14, 1989, which stated:

The issue of whether or not Plaintiffs should have received 30 percent of the value of land owned by the Defendants which was traded for development work has already been fully and fairly litigated. Evidence on this issue was produced by both parties. The issue was fully argued by both parties in their final arguments to the Court. Now, Plaintiffs seek to relitigate the issue in their proposed Judgment. The Court should consider the issue closed.

The Bennett–Carder land trade involved land owned by the Defendants which had a market value accepted by Bennett–Carder of $122,450.00. The land trade was in exchange for work done by Bennett–Carder on the Spring Canyon Subdivision. Defendants have contended from the beginning that Jack Richardson, not Don Schaub, concluded the land trade with Bennett–Carder. * * * Prior to their work on Spring Canyon, Gene Bennett and Chuck Johnson of

Bennett–Carder had accepted land from Richardson in exchange for development work on Units C–1, C–2, and C–3. Those transactions were conducted directly with Richardson. * * * The business relationship with Bennett–Carder was originated by Jack Richardson, who continued that relationship over the years.

The Plaintiffs' claim for $36,735.00 is entirely inequitable. Jack Richardson traded his own land to a contractor he had personally worked with over the years, and Plaintiffs now attempt to claim with a straight face that the Court should order Mr. Richardson to pay over them $36,735.00 for Richardson's own land. As noted at Page 17 of Defendants' Final Argument, the Bennett–Carder land trade should not even be considered by the Court because it was never pleaded, and in fact was raised for the first time in Plaintiffs' Trial Brief after the trial. Plaintiffs now attempt to resurrect the untimely claim.

Considering that the claim relates to the Spring Canyon Subdivision, the Court should put the claim into context. To this point, the Court has indicated that the parties should walk away from the Spring Canyon affair. The Court has not ordered any compensation to Schaub for work performed on Spring Canyon, and the Court has not obligated Schaub to pay any of the Spring Canyon expenses. If in fact Schaub was obligated to pay 30 percent of the expenses on Spring Canyon, then the Court could wash the Bennett–Carder transaction by simply crediting Schaub for the $36,735.00 against his obligation to pay 30 percent of the expenses.

The evidence has clearly shown that the Spring Canyon Subdivision was a financial disaster for the Defendants. Development costs on Spring Canyon, borne solely by the Defendants, exceeded the sum of $300,000.00. But sales proceeds of only $41,930.95 are all the money the Defendants have seen from Spring Canyon. To award Don Schaub $36,735.00, plus interest, for allegedly being involved in the trade of the Defendants own property for costs which Schaub arguably was responsible for would result in Schaub being the only "winner" out of the Spring Canyon affair, and a big winner at that.

Defendants' Exhibit M–4 shows that the land trade with Bennett–Carder was not actually concluded until May 5, 1987, long after the relationship between Plaintiffs and Defendnats [sic] had terminated.

If Mr. Schaub now claims a commission as a licensed Wyoming real estate broker, he has failed to produce evidence to sustain his burden of proof. He has produced no contract even though a broker is legally required to produce written listing agreements. See W.S. 33–28–111(a)(xx). In fact, Mr. Schaub, if he seriously claims a commission on the Bennett–Carder land trade, has failed to follow numerous provisions of the Wyoming Real Estate License Act. Moreover, Schaub has simply failed to produce evidence concerning a specific agreement between broker and owner on the Bennett–Carder transaction.

As it did in its original Findings and Conclusions, the Court should now overrule Plaintiffs' claim for this commission.

H & S Marketing, Inc. and Schaub responded as follows:

Defendants have twisted plaintiffs' claim for commissions on the Bennett–Carder land trade almost beyond recognition. This claim is fully described at pages 14–17 of Plaintiffs' Reply Brief. While it is true that plaintiffs initially overlooked this trade in the preparation of Exhibit 41, plaintiffs realized this was in fact a legitimate claim when defendants introduced Exhibit M–4. Accordingly, at the end of the trial, plaintiffs moved to amend their pleadings to conform to the evidence.

The evidence was that Schaub, while a licensed Wyoming real estate broker, arranged to trade work performed by Bennett, Carder & Associates, Inc. on the Spring Canyon Ranch property for $122,-450.00 worth of property in the Commissary Ranch subdivisions. * * * Plaintiffs are entitled to 30% of such trades.

\* \* \* Defendants received the value of what was traded for the Commissary Ranch lots (the development work on Spring Canyon Ranch) just as defendants received the value for other things traded for Commissary Ranch lots (such as cars, paintings, and jewelry). The evidence is clear that Schaub not only initially found Bennett–Carder, a company willing to perform development work in return for traded property, but he also arranged this specific trade. \* \* \* Exhibit M–4, introduced by defendants, bears this out. Page 2 of Exhibit M–4 is a memorandum dated January 13, 1983, signed by Don Schaub, and by Harry Kesner [sic] and Chuck Johnson of Bennett–Carder. The memorandum describes the ten lots ultimately conveyed to Bennett–Carder by the warranty deed, which is page 1 of Exhibit M–4. The memorandum states: "Bennett–Carder Assoc. Inc. ... total $122,450.00—pay off for Spring Canyon Ranch, Lincoln County, Wyoming Survey, paid in full." While it took defendants several more years to actually issue the warranty deed, it is clear that the trade was arranged while plaintiffs were still involved with defendants. Plaintiffs are entitled to commission and interest on the Bennett–Carder trade.

Defendants have raised the defense that Spring Canyon was not a good investment for them. Whether or not this is true is totally irrelevant to the Bennett–Carder trade. Defendants received value for the traded Commissary Ranch lots in the form of engineering services on Spring Canyon which the parties agreed was worth $122,450. Defendants are not entitled to be relieved of this obligation merely because they are unhappy with how the overall project turned out. Defendants have also asserted that there is no written listing agreement. This issue has already been briefed and the Court has decided that there is no statute of frauds defense.

In paragraph 4 of the Court's Supplemental Findings and Conclusions, it directed plaintiffs to inform the Court in writing how plaintiffs calculated the prejudgment interest on the commission due on the Bennett–Carder trade. The amount of commission claimed is $36,735 ($122,450 times 30%). This amount was then multiplied by 7 percent times 6 years and 2 months (January 1983 to March 1989). This calculation results in $15,857.28 of interest. This amount is different from the original amount of interest calculated in plaintiffs' proposed judgment, which was calculated in error.

The trial court entered a ruling in favor of Schaub and H & S Marketing, Inc. on March 30, 1989 and then corrected for erroneous computation of interest by a nunc pro tunc decision entered April 4, 1989.

Richardson then moved for a new trial or, in the alternative, to alter or amend judgment:

1. To grant a new trial, pursuant to Rule 59(a) of the Wyoming Rules of Civil Procedure, on the single issue of whether or not Plaintiffs were entitled to a 30 percent real estate sales commission for the Bennett–Carder land trade, or

2. To alter or amend the judgment entered herein, pursuant to Rule 59(e) of the Wyoming Rules of Civil Procedure, disallowing recovery by Plaintiffs for the Bennett–Carder land trade and thereby reducing the judgment by the amount of $52,592.28.

The grounds for this Motion are as follows:

1. Surprise, pursuant to Rule 59(a)(3) W.R.C.P.

2. Error in the assessment of the amount of recovery, pursuant to 59(a)(5) W.R.C.P.

3. That the Judgment is not sustained by sufficient evidence and is contrary to law, pursuant to Rule 59(a)(6) W.R.C.P.

4. Newly discovered evidence, material for the Defendants, which Defendants could not, with reasonable diligence, have discovered and produced at the trial, pursuant to Rule 59(a)(7) W.R.C.P.

5. The Judgment should be reduced as it is excessive under the circumstances. The circumstances are that Plaintiffs have been awarded $52,592.28

for a claim which was never pleaded, discovered, pretried or tried.

6. A Memorandum of Law and an Affidavit of Counsel are attached hereto and incorporated herein.

Schaub and H & S Marketing, Inc. responded by memorandum dated April 18, 1989:

Like all other issues in this litigation, the Bennett–Carder trade has been argued and reargued. It was first argued in the final arguments which were submitted to the court in the form of written briefs. Then, at the request of the Court in its Supplemental Findings and Conclusions dated March 6, 1989, plaintiffs and defendants again addressed this issue. Plaintiffs' position was set forth at pages 5 through 7 of Plaintiffs' Response to Defendants' Objections to Supplemental Findings and Conclusions, which plaintiffs will not repeat here. Defendants have once already requested the Court to amend the judgment regarding the Bennett–Carder claim to correct the amount of the interest due. Plaintiffs did not oppose that amendment, which resulted in the judgment nunc pro tunc.

\* \* \* \* \* \*

Defendants claim that it was unfair to award plaintiffs judgment in the sum of $52,592.28 for commissions from the Bennett–Carder land trade. In support of this assertion, they claim that the Bennett–Carder trade was not properly pleaded, discovered, pretried or tried. They claim surprise and now want to relitigate this claim.

It is incredible that defendants are claiming surprise when all of the facts necessary to support the Bennett–Carder claim were amply produced in evidence at the trial. As pointed out in the previous briefs, much of the critical evidence on this claim was introduced by defendants themselves. At the conclusion of the trial, both plaintiffs and defendants moved to amend the pleadings in this case to conform to the evidence. No objection was made by either side, and the court granted the motions. \* \* \*

This effectively cured any pleading and notice problem. [Citing W.R.C.P. 15(b).]

The resulting decision of the trial court stated:

The Court will deny the motion for new trial. There are several reasons why the motion should be denied. The Court will not mention all of the reasons.

At all times, Mr. Schaub acted as a real estate *broker* for Mr. Richardson and Battlefield. Neither Quality Realty, nor anyone else, acted as broker for the sellers. Consequently, all commissions earned by Schaub were broker's commissions. Those broker's commissions earned before a broker's license was secured cannot be recovered.

Mr. Schaub is entitled to broker's commission earned after he received his broker's license. Mr. Richardson is entitled to offset against these lawful broker's commissions, Mr. Schaub's proportionate share of development costs which were attributable to the particular lots sold. With respect to the Bennett–Carder land trade, the Court is able to ascertain from the evidence the amount of broker's commissions which were earned by Mr. Schaub. However, like all other lots sold by Mr. Schaub, the Court is unable to ascertain from the evidence the precise amount of developments [sic] costs which were specifically incurred against the lots involved in the Bennett–Carder transaction. Furthermore, while it would be nice if the parties could receive a perfect trial, the Supreme Court has recognized, that perfection is not required. In spite of the lack of perfection in the evidence in this case, the time for presenting evidence has passed. It is now time for the rules of civil procedure to mean something. It is now time for this case to become final.

(Emphasis in original.)